**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | **CASE NO. 1:14 CR 341** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Kali Alexander, et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon the following motions filed jointly by all defendants:

Defendants' Motion for Disclosure of Confidential Informants (Doc. 34); Defendants' Motion *in*

*Limine* to Exclude Out of Court Statements of Confidential Informants (Doc. 35); Joint Motion

for Disclosure of Impeaching Information (Doc. 36); Defendant's (sic) Joint Motion for

Discovery on the Issues of Racial Profiling/Selective Enforcement and/or Selective Prosecution

(Doc. 37); Defendants' Motion to Dismiss the Indictment (Doc. 39); Joint Motion *in Limine* to

Exclude Other Acts/Crimes Evidence Under F.R.E. 404(b) (Doc. 41); Joint Motion to Preclude

Sentence Enhancement (Doc. 42); Defendants' Motion for Early Disclosure of Jencks Material

1

(Doc. 43); and Defendants' Joint Motion for Severance Pursuant to *Bruton v. United States*, 391 U.S. 123 (Doc. 45).  Also pending is the Motion to Sever Counts 8-11 (Doc. 40), filed by all defendants with the exception of defendant Flowers.  For the reasons that follow, the motions are DENIED, with the exception of the Joint Motion *in Limine* to Exclude Other Acts/Crimes Evidence Under F.R.E. 404(b) (Doc. 41) and the Motion to Sever Counts 8-11 (Doc. 40).  Those motions are held in abeyance pending the additional briefing requested herein.  The government's brief is due on or before April 13, 2015 and defendants' response is due on or before April 20, 2015.  The hearing set for April 13, 2015 is cancelled.

**FACTS**

On September 23, 2014, the grand jury returned an eight-count indictment charging defendants Kali Alexander, Rasheam Nichols, Justin Maxwell, Terrance Chappell, and Kenneth Flowers with crimes related to a "reverse sting operation."  Count one charges defendant Alexander with distribution of heroin.  Count two charges all defendants with conspiracy to possess with intent to distribute cocaine.  Counts three through seven charge each defendant respectively with firearm possession during the commission of the crime charged in count two.  Counts eight through eleven charge each defendant, with the exception of defendant Flowers, with felon in possession of a firearm.

In this "reverse sting" operation, an undercover agent from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") spoke with a confidential informant, who claimed to know defendant Alexander.[1]  According to the informant, defendant Alexander attempted to sell the

---

[1]  The confidential informant was introduced to defendant Alexander by another ATF confidential informant.  In total, three confidential informants were involved in this case.

2

informant a weapon.  The ATF reviewed defendant Alexander's criminal history and discovered that he had previously been convicted in 2009 of aggravated robbery with a firearm specification and having a weapon under a disability.

The confidential informant then fabricated a story to Alexander regarding a potential "stash house" invasion.  It appears that the idea came entirely from the ATF.  The informant indicated that he had an associate (an undercover ATF agent) who made narcotics deliveries and was not being paid.  The informant told Alexander that the associate wanted to invade the stash house.  Subsequently, several recorded meetings took place between the confidential informant, an  undercover ATF agent, and defendant Alexander. During one of the meetings, the ATF agent told defendant Alexander that the stash house would be guarded by two individuals possessing guns.

Subsequently, defendant Alexander involved the other defendants in the possible scheme. The ATF agent met with defendant Nichols, who participated with Alexander in the 2009 aggravated robbery.  The ATF agent informed Nichols and Alexander that he expected there to be approximately eight or nine kilograms of pure cocaine at the stash house and that the drugs should be divided "50/50" between the ATF agent on the one hand, and the other participants on the other hand.  Defendant Maxwell and defendant Alexander attended a subsequent meeting with the ATF agent and a confidential informant to further discuss the details of the robbery. Maxwell had previously been convicted, along with Nichols and Alexander in connection with the 2009 aggravated robbery.

Ultimately, on the day the robbery was to take place, Alexander, Nichols, Maxwell, and defendants Flowers and Chappell met with a confidential informant and the undercover ATF

3

agent to finalize the robbery plans.  Again, the ATF agent informed everyone of the "50/50" split.  The ATF agent then drove to a prearranged location, followed by a car containing the defendants, where the governmental agents executed defendants' arrests.

According to defendants, the entire plan was conceived by the government.  In fact, no stash house existed.  The defendants claim that the government convinced them to bring guns to the "robbery" and inflated the amount of cocaine involved so as to trigger the mandatory minimum for purposes of sentencing.

Defendants filed a number of motions, which the government opposes.  Each will be addressed in turn, although not in the order in which they were filed.

1.  Motion to dismiss (Doc. 39)

Defendants move to dismiss the indictment on the bases of entrapment, outrageous government conduct, and violation of the Eighth Amendment's guarantee against cruel and unusual punishment.

Defendants claim that the government entrapped them into committing the crimes charged in the indictment.  According to defendants, they have no predisposition to commit stash house robberies.  In addition, the defendants did not "scope out" the stash house or assign roles to the participants.  This, defendants claims, demonstrates that they were not capable of committing the crime without the actions of the government agent.  In response, the government argues that the criminal records of Alexander, Nichols, and Maxwell clearly show a predisposition to engage in the criminal activities covered by the indictment in that all three were previously convicted together for aggravated robbery and having a weapon under a disability.  The government further points out that Chappell has a previous conviction for burglary.  All four

4

of these defendants have previous drug related charges.  And, although Flowers has no previous convictions, the government did not target or otherwise approach Flowers to participate in the robbery.  Rather, defendant Alexander recruited the participants himself with no input from the government.  The government also argues that defendants were motivated by money and none showed any hesitation or reluctance to participate.

Upon review, the Court finds that dismissal of the indictment is not warranted.  "To warrant dismissal before trial on the ground that the defendant was entrapped as a matter of law, this court has held that the undisputed evidence must demonstrate a 'patently clear' absence of predisposition." *United States v. Tucker,* 28 F.3d 1420, 1428 (6th Cir. 1994)(citations and quotations omitted).

The factors relevant to determining a defendant's prior disposition include:

the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*United States v. McLernon*, 746 F.2d 1098,1112 (6th Cir. 1984)(citations omitted).

Here, the Court finds that the evidence, taken in the light most favorable to the government, does not establish "lack of predisposition" as a matter of law.  Even if the Court does not consider defendants' prior criminal records, sufficient evidence of predisposition exists to present the issue of entrapment to the jury.   As the government notes, there is no indication that the government targeted or approached any defendant except Alexander.  And, with regard to defendants Chappell and Flowers, it does not appear that the government even knew they would be participating in the stash house invasion until the day the invasion was to occur.

5

Moreover, the Court agrees with the government that statements obtained from the defendants demonstrate that defendants engaged in the endeavor in order to make a profit.  There is no indication at this time that the government made repeated inducements or otherwise engaged in threats or unfair persuasion in order to convince defendants to engage in the criminal activity charged in the indictment.  The court rejects defendants' argument that the government engaged in "excessive inducement" by offering a large quantity of drugs as a payoff.[2]  In addition, and as aptly noted by the government, there is significant evidence that defendants were given the opportunity to withdraw from the conspiracy, but chose not to.  In fact, defendant Alexander himself asked defendants, "any one of y'all right now don't want to go, give me that hammer (firearm) right now."  No defendant showed any hesitation or reluctance.  Because the evidence does not disclose a "patently clear" absence of predisposition, the issue of entrapment is for the jury to resolve.  *See also, United States v. Reese*, 2010 WL 2606290 (N.D. Ohio June 25, 2010)(issue of entrapment for jury in stash house robbery case where defendants had prior drug convictions).

Defendants also argue that the government's conduct in this case is outrageous such that it violates the Due Process Clause of the Fifth Amendment.  Defendants cite a number of cases from outside of the Sixth Circuit in support of their position.  Defendants, acknowledge, however that the Sixth Circuit takes a very narrow view of "outrageous government conduct" cases.  In the Sixth Circuit, "[t]he availability of the "outrageous government conduct" defense is a question of law to be reviewed *de novo*.  *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir.

---

[2]     Defendants largely rely on cases from the Seventh Circuit and do not cite to any relevant Sixth Circuit case involving stash house robberies.

6

1999).

> In *Tucker*, this Court expressly held that a defendant whose defense sounds in inducement cannot avail himself of the "outrageous government conduct" defense. We refused to recognize a defense based solely upon an objective assessment of the government's conduct in inducing the commission of crimes.  We stated that, as a matter of law, government conduct [that] induces a defendant to commit a crime, even if labeled 'outrageous,' does not violate that defendant's constitutional right of due process.

*Id.*  (Citations and quotations omitted).   In other words, "the outrageous government conduct defense is not available where the defense is based either on a theory of government inducement, or on a theory that the undercover officer's involvement in creating [the] crime was so significant that criminal prosecution violates due process."  *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006).  Here, defendants argue that the government's conduct in (1) creating a fictitious crime and (2) offering impoverished people a large payout and suggesting they bring guns is unconstitutionally "outrageous."  Under *Warwick* and *Blood*, however, a court cannot rely on either of these theories to support dismissal of an indictment on due process grounds.  Accordingly, the argument is rejected.

Defendants also argue that dismissal is warranted because the mandatory minimum statutory penalty for the conspiracy charge is grossly disproportionate to the "real offense conduct."  As such, defendants claim the penalty violates the Eighth Amendment.  Defendants rely on the Supreme Court's decision in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), wherein the Court determined that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment.  According to defendants, the mandatory minimum sentence in this case amounts to cruel and unusual punishment because it is based solely on the government's creation of an amount of fictional cocaine.  Because a ten year minimum sentence is "grossly disproportionate"

7

to the crime actually committed, count two must be dismissed**.**

Upon review, the Court rejects defendants' argument.  Defendants point to no case applying the Eighth Amendment to circumstances like those before this Court.  Rather, defendants rely solely on *Miller*, which addressed mandatory life imprisonment for juvenile offenders.  *Miller* is simply not on point and defendants' argument that count two must be dismissed on Eighth Amendment grounds is rejected.

2.  Sentencing enhancement

Defendants argue that the Court should not enhance defendants' sentences based on the quantity of cocaine at issue.  According to defendants, the government manipulated the drug quantity to ensure that the mandatory minimum applied.  In the alternative, defendants argue that the quantity of drugs suggested by the government was less than five kilograms and, as such, the enhancement cannot apply.  The Court finds that this issue is more appropriately raised, if necessary, at the time of sentencing.  The guidelines require the Court to ascertain the amount of cocaine at issue.  The Court is not in a position to do so at this time.  Accordingly, the argument is rejected at this time and defendants are given leave to present the argument if they so choose during the sentencing proceedings.  The Court notes, however, that the Sixth Circuit has repeatedly and routinely noted that it has never recognized the doctrine of "sentencing entrapment" or "sentencing manipulation."  *See e.g., United States v. Gardner*, 488 F.3d 700 (6th Cir. 2007)("neither this court, nor the Supreme Court officially has recognized the theory of sentencing entrapment"); *United States v. McGee*, 510 Fed.Appx. 377 (6th Cir. Jan. 7, 2013)("[W]e have declined to recognize the defenses of sentencing entrapment or sentence manipulation in other cases and do so again here."); *United States v. Greer*, 415 Fed.Appx. 673

8

(6th Cir. Feb. 28, 2011)("More recently, we have 'reaffirmed that the Sixth Circuit does not recognize either' sentencing manipulation or entrapment.  The consistent holdings of this Court foreclose [defendant's] argument.").

3.  Severance

Defendants, with the exception of defendant Flowers, move under Fed.R.Crim.Pro. 14 to sever counts eight, nine, ten, and eleven.[3]  These counts individually charge each defendant as a felon in possession of a  firearm.  According to defendants, these charges should be severed from the drug related charges as the jury will discover defendants' prior felony convictions.

"In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever."  *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).  The government argues that severance is not warranted because the prior felony convictions are admissible for other purposes.  Accordingly, defendants cannot show compelling, specific, and actual prejudice.  As set forth below, the parties will be filing additional briefing on the issue of the admissibility of defendants' prior convictions.  Because this issue bears on whether severance or bifurcation is appropriate, the Court will address defendants' request for severance in connection with its ruling on defendants' motion to exclude 404(b) evidence.

Defendants also argue that severance of each defendant is warranted based on Sixth Amendment grounds.  Defendants claim that governmental agents interviewed each of them following their arrests.  Each made statements implicating the others.  Thus, in the event certain defendants invoke their Fifth Amendment rights and decline to testify, the Sixth Amendment

---

[3]    Defendant Flowers is not named in any of these counts.

right to confront accusers will be violated.  In response, the government argues that severance is not warranted because the government intends to redact any portions of the statements provided by defendants that raise Sixth Amendment concerns.

Upon review, the Court rejects the argument that severance is required at this time in order to avoid a Sixth Amendment violation.  As the Sixth Circuit has noted, "ordinarily when, at a joint trial, a codefendant's prior statement, testimonial or otherwise, is introduced only against the declarant-codefendant, and not against the complaining codefendant, the latter has suffered no violation of his Sixth Amendment Confrontation Clause rights."  *Untied States v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007).  "The Supreme Court has recognized an exception to this general rule where a co-defendant's statement facially incriminates the defendants...."  *Driver*, 535 F.3d at 428 (*citing Bruton v. United States*, 391 U.S. 123, 135-36 (1968)).

Here, the government concedes that defendants' post-arrest statements implicate *Bruton*.  The government notes, however, that it will redact these statements in order to comply with *Bruton* and alleviate any Sixth Amendment concerns.  Certain redactions are permissible in the Sixth Circuit.  *See, United States v. Vasilakos*, 508 F.3d 401 (6th Cir. 2007).  In addition, the Court may provide a limiting instruction to the jury.  As such, severance is not required under *Bruton*.

4.  Racial profiling discovery

Defendants request that the Court enter an order allowing them limited discovery to support their claim that the ATF and the Office of the United States Attorney engaged in racial profiling and selective enforcement/prosecution.  Among other things, defendants seek: a list of cases pending in both the Northern and Southern Districts of Ohio involving phony stash house

10

robberies and information related thereto; ATF manuals; information regarding supervisor oversight of phony stash house robberies; and similar information pertaining to the United States Attorney's Office.  Defendants claim that they have met their initial burden under *United States v. Armstrong*, 51 U.S. 456 (1996), with statistical evidence showing that the clear majority of individuals targeted by the government in these types of cases are African-American.

In response, the government argues that defendants fail to point to any relevant statistics. According to the government, information from another district does not satisfy defendants' burden under *Armstrong*.  The government further argues that defendants fail to point to similarly situated individuals of other races that were treated differently.  Rather, defendants' attempt to use the entire adult Caucasian population is misguided.  Defendants further note that only defendant Alexander was "selected" by the government.  The remaining individuals were selected by Alexander.

In the absence of evidence to the contrary, "courts presume that [prosecutors] have discharged their official duties."  *Armstrong*, 51 U.S. at 464.  Those decisions, however, are subject to constitutional constraints, including the Due Process Clause of the Fifth Amendment, which precludes prosecutorial decisions based on an "unjustifiable standard such as race, religion, or other arbitrary classification."  *Id*. (Citations and quotations omitted).  The standard for establishing a selective enforcement claim[4] is exacting.  *Id*. at 463.  As such, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of

---

[4]     Defendants argue that discovery is warranted based on "selective prosecution/enforcement."  It appears, however, that defendants' claim is more akin to a selective enforcement claim.  The standard for obtaining discovery, however, is the same.  *See, United States v. Barlow*, 310 F.3d 1007, 1010 (7th Cir. 2002).

11

insubstantial claims." *Id.* at 464.

In order to succeed on a selective enforcement claim, defendants must establish that the government's actions had both a discriminatory purpose and effect. *Id.* "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.* at 465. Defendants, however, need not prove their claim in order to obtain discovery. They must, however, make a "credible showing of different treatment of similarly situated persons...." *Id.* at 469.

Here, defendants point to statistics from the Northern District of Illinois in support of their motion for discovery. According to these statistics, beginning in 2006, 17 stash house robberies were charged in that district. In total, 42 of the defendants were African American, while eight were Latino and seven were Caucasian. Of the cases brought since 2011, none of the defendants charged are Caucasian. According to defendants, these statistics amount to a "credible showing." Defendants further note that one other case was charged in this District and, in that case, all defendants were African-American.

Upon review, the Court finds that the statistical sampling offered by defendants is insufficient to warrant discovery in this case. As an initial matter, the Court notes that defendants offer statistics from only one location outside of this District. The Court is not convinced that the statistics are relevant to whether there is a discriminatory effect on defendants' prosecution in this district. The statistics, without more, do not suggest either a large-scale policy or local policy that would impact defendants here. Therefore, the relevancy of the statistics is doubtful. Other than statistics from the Northern District of Illinois, defendants point out that the two phony stash house cases in this District involve only African-American

defendants.  The Court finds that these statistics fall short of the "some evidence" standard.  Two cases, standing alone, in no way suggests discriminatory effect.

Moreover, it is well-settled that in order to satisfy the *Armstrong* test, defendants must show that similarly situated individuals of a different race were not charged or prosecuted. *United States v. Bass*, 536 U.S. 862 (2002)(per curium)("raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants").  *See also*, *United States v. Thorpe*, 471 F.3d 652 (6th Cir.2006)(finding district court's grant of discovery "clearly erroneous" where defendant's statistics failed to show that other similarly situated individuals were not prosecuted).  Defendants have not done so.

The Court acknowledges defendants' argument that it would be nearly impossible for them to offer "some evidence" of similarly situated individuals due to the nature of phony stash house robberies.  Defendants would have a difficult time identifying individuals of another race that could have been–but were not–targeted by the government.  Even if, however, the statistics offered by the defendants could somehow be used to establish "some evidence" of discriminatory effect, defendants wholly fail to point to any evidence of  "discriminatory intent." In order to be entitled to discovery, defendants must offer some evidence demonstrating that the "decisionmakers in [their] case acted with discriminatory purpose."  *United States v. Lawrence*, 735 F.3d 385 (6th Cir. 2013)(citations and quotations omitted).  In this regard, the statistics offered by defendants regarding the Illinois cases have no bearing on whether the decisionmakers in defendants' case acted with discriminatory purpose.  Defendants can only point to the fact that the one other case in this district involved African-Americans.  This, however, falls far short of providing "some evidence" that either the ATF agents or the

13

prosecutors acted with a discriminatory purpose in this case.  *See also*, *United States v. Thorpe*, 471 F.3d 652 (6th Cir.2006).  Accordingly, defendants are not entitled to the discovery they seek.  *See also, United States v. Cousins*, 2014 WL 5023485 (N.D. Ill. Oct. 7, 2014)(discovery in phony stash house case denied in large part where defendant failed to provide "some evidence" of both prongs of the *Armstrong* test); *United States v. Whitfield*, 29 F.Supp.3d 503 (June 27, 2014)(E.D. Pa. June 27, 2014)(discovery in phony stash house case not warranted where defendants data focused solely on racial composition of those targeted).  *But see, United States v. Paxton*, 2014 WL 1648746 (N.D. Ill. April 17, 204)(finding that defendants' statistics, which are the same as those offered in this case, satisfied both prongs of the *Armstrong* test such that defendants were entitled to some discovery).

     5.  Identities of confidential informants

Defendants argue that they are entitled to the disclosure of information related to the confidential informants used in this case.  Defendants seek the identities, locations, telephone numbers, and other information concerning the participation of the informants in assisting the government.  According to defendants, disclosure is required under *Roviaro v. United States*, 353 U.S. 53 (1957).  In response, the government argues that defendants fail to articulate any specific need for the disclosure of the confidential informants.  Rather, according to the government, defendants' generalized request falls short of satisfying *Rovario*.

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.  The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligations of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

14

*Rovario*, 353 U.S. at 59.

The privilege, however, is limited.  "Where disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  *Id*. at 60-61.  There is no bright line rule with respect to the disclosure of confidential informants.  Rather,

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.  Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id*. at 62.

In addition, "danger to the informant's life must be given significant weight in striking the *Roviaro* balance."  *United States v. Straughter*, 950 F.2d 1223, 1232 (6th Cir. 1991).  The defendant bears the burden "to show how disclosure of the informant would substantively assist his defense."  *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).

Here, defendants offer only generalized assertions of how disclosure of the informant's identities might assist the defense.  Defendants point out that courts generally order disclosure of the identities of informants who are "participants" in the commission of the crime.  Defendants, however, point to no specific evidence or information that the informants could provide that would be "essential to a fair trial."  *Moore*, 954 F.2d at 381.  Moreover, in this case, defendants acknowledge that the "majority of the interactions between the [confidential informants] and the defendants were recorded" and that governmental agents participated in the critical aspects of the case.  Defendants then summarily claim that "unrecorded interactions with the defendants may well be material and favorable to the defense."  These generalized assertions of potential

15

"helpfulness" do not provide a sufficient basis to warrant disclosure.  *See, United States v. Sierra-Villegas*, 774 F.3d 1093 (6th Cir. 2014)(district court did not abuse its discretion in declining to disclose information regarding informant who participated in crime where defendant failed to point to specific way in which informant's testimony would be relevant or helpful).

And, although not raised in the motion, the Court notes that any potential entrapment defense does provide a basis for disclosure.  Although raised in other motions, defendants notably do not mention entrapment as a basis for waiving the privilege.  The Sixth Circuit has noted that defendant must "adduce some evidence of entrapment" and "unsworn assertions of [] counsel" are insufficient to warrant even *in camera* review of the informant's testimony.  *United States v. Sharp*, 778 F.2d 1182 (6th Cir. 1985).  Here, defendants fail to offer even unsworn assertions of counsel in support of their motion.  Therefore, disclosure is not warranted.

The Court's conclusion is bolstered by the fact that the government provided documents *in camera* showing that disclosure of information pertaining to the informants would pose a grave danger to their safety and threaten ongoing investigations.[5]  This, coupled with the fact that defendants fail to offer any evidence or specific argument as to how the informants' testimony is essential to a fair trial or would substantively assist their defense weighs strongly in favor of nondislcosure.

6. Statements by confidential informants

Defendants move to exclude out of court statements made by the confidential informants. According to defendants, these statements are hearsay and their introduction would violate the

_____

[5]     The government moved to submit these materials *in camera* and the defendants did not oppose the motion.

16

Confrontation Clause.  In response, the government argues that they intend to introduce the statements for non-hearsay purposes.   Specifically, the government claims that the statements will be used to provide background information or to provide context and give meaning to the defendants' own recorded statements.

Upon review, the Court finds that defendants' motion must be denied at this time.  As the government correctly points out, certain statements made by confidential informants, including recorded statements intended to provide context, are excepted from the hearsay rule.  Therefore, their admission does not violate the Confrontation Clause.  *See, e.g., United States v. Sexton*, 119 Fed.Appx. 735 (6th Cir. Jan. 6, 2005)(recorded statements by confidential informants used to provide context for defendants' admissions are admissible and do not raise a Confrontation Clause problem).  On the other hand, statements made by confidential informants used by the government to establish the truth of the matter may not be admitted.  *See, e.g., United States v. Hearn*, 500 F.3d 479 (6th Cir. 2007)(admission of statements made by confidential informant and introduced by the government which established elements of the offense violated the Confrontation Clause).

Here, defendants' do not seek to exclude any particular statement.  Thus, the Court is simply not in a position to make admissibility determinations.  Therefore, the motion is denied at this time.  Defendants may renew their motion to the extent they deem necessary during trial.

7.  Other acts evidence

Defendants argue that evidence of other bad acts is not admissible.  According to defendants, evidence of alleged misconduct involving other criminal convictions or wrongdoing is not admissible under Rule 404(b).  In response, the government argues that the 2009

17

aggravated robbery convictions[6] of Alexander, Maxwell, and Nichols are admissible for "non-404(b)" purposes, including to rebut the defendants' entrapment assertions.  In addition, the evidence is admissible as "background evidence" to show how and why the defendants knew each other.  In the alternative, the government claims that the evidence is admissible under Rule 404(b) to show defendants' knowledge, intent, and planning.  The government also argues that the evidence is relevant for 404(b) purposes with regard to the gun charges, which require the government to establish that defendants "knowingly" possessed or "used or carried" firearms.  The government claims that the 2009 aggravated robbery convictions are admissible to show motive in that defendants were recently released from prison and were searching for opportunities to make money.

Rule 404(b) provides as follows:

Other Crimes, Wrongs, or Acts– Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

In the event the government is able to establish that the evidence is admissible for showing background or development of a conspiracy, then Rule 404(b) is not implicated.  *United States v. Miller*, 48 Fed. Appx. 933, 949 (6th Cir. Oct. 17, 2002).  Evidence falling into this

---

[6]     The government discusses other convictions and bad acts throughout its memorandum.  In the context of opposing defendants' 404(b) motion, however, the government focuses almost exclusively on the 2009 aggravated robbery conviction.  Accordingly, the Court's analysis focuses largely on those convictions.  Moreover, as set forth herein, of all of the convictions, the  2009 robbery convictions are the closest in kind to the conduct charged in the indictment.

category generally has a:

> causal, temporal or spatial connection with the charged offense.  Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*. (*quoting United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).  Background evidence is that which is "inextricably intertwined" with the charged offenses.  *Hardy*, 228 F.3d at 748.

Upon review, the Court finds that the prior armed robbery convictions are not admissible for background purposes or to show how the conspiracy developed.  These robberies are distinct in time and appear to have no connection to the charged offense.  In other words, they are not "inextricably intertwined" with the stash house robbery at issue in this case.

In addition to the expressly enumerated proper purposes, evidence of entrapment is generally recognized as a proper purpose under Rule 404(b)*.  See, United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985).

> A defense of entrapment is often countered by evidence of other crimes and wrongs in order to show the defendant's predisposition to commit the offense or offenses charged.  This is a permissible use of such evidence not explicitly referred to in Rule 404(b), but generally recognized. ...[T]he introduction of evidence of extrinsic offenses is a reliable method of proving the criminal predisposition needed to rebut the allegation or inference of entrapment.

*United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985).

Prior crimes, however, are "not admissible to prove a predisposition to commit criminal acts generally."  *Id*.  That would be proof of bad character, which is not a basis for admissibility under Rule 404(b).  "The use of such evidence to show predisposition is permitted only when the other crimes are of the same nature as those charged."  *Id*.  The evidence must be based on conduct "near enough in kind to support the inference that the defendant's purpose included the

offense of the sort charged."  *United States v. Al-Cholan*, 610 F.3d 945 (6th Cir. 2010).

Prior to admitting evidence under this rule, the Court must: (1) make a preliminary determination that the prior bad acts occurred; (2) determine whether the other acts are admissible for a proper purpose; and (3) engage in the balancing test set forth in Rule 403. *United States v. Hopper,*436 Fed. Appx. 414, 420 (6th Cir. May 31, 2011).

As an initial matter, the Court notes that the government references a number of "prior acts" and convictions throughout its omnibus brief.  It appears, however, that the government's argument in connection with 404(b) is largely related to the 2009 robbery convictions and a comparison of those convictions to the home invasion at issue in this case.  There is no substantive discussion of defendants' other convictions or any other "bad act."  Similarly, defendants do not request the exclusion of any specific conviction or "bad act."  And, no party discusses the relevancy of the prior convictions to the actual charges at issue in this case.  For example, the parties do not address whether the 2009 robbery, which involved the use of a weapon, is "substantially similar" to the Section 924(c) charges.  This is especially important in that it appears that defendants are claiming that the government entrapped them into bringing weapons to the home invasion.

Here, the primary argument raised by the government is that the 2009 robbery *when compared to the nature of the home invasion* in this case, is admissible.  Upon review, the Court rejects the argument.  The government argues that the conduct engaged in by Alexander, Maxwell, and Nichols in 2009 is "near enough in kind" to the conduct at issue here.  According to the government, this case involves an armed invasion of a stash house and defendants' prior conviction for armed robbery in sufficiently similar to warrant inclusion of the evidence.  This

20

Court disagrees.  The 2009 conviction involved an armed robbery of an individual's wallet.

Armed robbery of an individual's wallet is not relevant to show a defendant's propensity to

commit an armed home invasion where the proceeds consist of a large amount of cocaine.  As

such, the government's argument is rejected.  *See, e.g.*, *United States v. Monea*, 376 Fed. Appx.

531 (6th Cir. 2010)(implicitly questioning district court's determination that "money laundering"

and "tax evasion" were substantially similar in that the Sixth Circuit "has rejected a broad view

of similarity of crimes").

      The government also argues that the 2009 convictions are admissible to show defendants'

knowledge and intent to join a conspiracy.  In addition, the government argues that the evidence

is relevant to show the existence of a common plan or goal.  The Court disagrees.  Defendants'

prior participation in an armed robbery involving an individual's wallet is not relevant to

showing knowledge or intent to join a conspiracy to engage in drug trafficking.  The same holds

true for the government's argument regarding "common plan."  The Court further rejects

defendants' argument that the evidence is admissible regarding motive.  The government argues

that the 2009 robbery convictions are relevant because defendants were recently released from

prison and therefore needed money.  Even if this evidence could possibly be relevant to

establishing motive, any slight relevancy is substantially outweighed by the danger of unfair

prejudice.  As the government itself notes, it possesses ample *other* evidence demonstrating that

defendants were in need of money.[7]

---

[7]    The government further claims that the 2009 convictions are
relevant to show knowledge with respect to the firearm charges.
The Court disagrees.  The cases cited by the government involve
situations where the defendants squarely put knowledge in issue.
As of yet, it does not appear that defendants have done so here.

The government relies on *United States v. Rodriguez*, 452 Fed. Appx. 883, 887 (11th Cir. 2012) for the proposition that the 2009 convictions are admissible to show intent. The government's citation misses the mark. In *Rodriguez*, the government charged defendants with, among other things, drug conspiracy and robbery in violation of the Hobbs Act. The court admitted evidence of "similar armed [home invasion] robberies to steal money and drugs with the same codefendants." Unlike *Rodrigeuz*, defendants here are not charged with robbery, nor is there any suggestion that they previously committed a home invasion where drugs were stolen. Thus, the facts involved in *Rodriguez* do not help the government.

Having addressed the parties' arguments, the Court finds that additional briefing is required in order to properly assess the admissibility of the prior convictions. In particular, the Court requests that the government focus on whether any prior bad act or conviction is admissible for purposes of rebutting defendants' entrapment claims with respect to the gun charges. The government must file a brief identifying each prior conviction or bad act the government intends to rely on in this regard. In addition, the government must specifically identify, with supporting case law, the basis for admissibility.[7] The government's brief is due on or before April 13, 2015. Defendants are to submit a response brief, also focusing on the issues set forth herein. Defendants' brief is due on or before April 20, 2015.

---

[7] The government notes that it may seek to admit the convictions under 404(a). At this point, the Court is faced only with defendants' motion to exclude under 404(b). As such, the Court makes no admissibility determinations under 404(a). The Court notes, however, that it appears that the "similarity" requirement also applies to 404(a). *See, United States v. Talley*, 188 F.3d 510, 1999 WL 685938 at *4 (6th Cir. 1999)(indicating that admittance of convictions that were not "substantially similar" under 404(a) was harmless error).

8. *Brady/Giglio*/Jencks Act

Defendants move the Court for an order compelling the government to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500.  In response, the government argues that defendants' requests are premature and that it has and will continue to comply with all of its disclosure obligations.  The Court agrees with the government.  Absent an identifiable dispute, the Court will not order the government to produce that which it is already legally obligated to provide.

Defendants also request that the Court order early disclosure of Jencks Act materials, including transcriptions of grand jury testimony.  Specifically, defendants ask the government to produce Jencks materials three weeks before the commencement of trial.  Alternatively, the defendants ask for a recess of trial after the close of the government's case in order to properly prepare their defense.  The government argues that it is not required to produce these materials that far ahead of the start of trial.  The government is correct.  *See, United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988)("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.").  Accordingly, defendants' motion for early disclosure of Jencks Act materials is denied.

**CONCLUSION**

For the foregoing reasons, the motions are DENIED, with the exception of the Joint Motion *in Limine* to Exclude Other Acts/Crimes Evidence Under F.R.E. 404(b) (Doc. 41) and the Motion to Sever Counts 8-11 (Doc. 40).  Those motions are held in abeyance pending the

23

additional briefing requested herein.  The government's brief is due on or before April 13, 2015

and the defendants' response is due on or before April 20, 2015.  The hearing set for April 13,

2015 is cancelled.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/3/15

24